IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                              Respondent

    v.                              Criminal No. 5:94cr50030
                                Civil No. 07-5037

REV. TOM BROWN                                                        Defendant/Petitioner

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

      Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions (Doc. 228) filed March 2, 2007 by Tom Brown under 28 U.S.C. Section 1651/2241 and 42 U.S.C. Section 2000vv, cc to vacate his conviction.  The Government filed its Response (Doc. 232) on May 8, 2007 and the Petitioner filed his Reply (Doc.235) on July 9, 2007.

I.  Background

      In January 1994, the petitioner, Reverend Tom Brown (hereinafter "Brown") helped establish "Our Church," and he deeded one of his forty acres of property to the church. The covenants of deed provided that Our Church would produce medicinal herbs and plants "possessed of the properties of spiritual enlightenment" and would distribute such herbs to the sick. Brown informed law enforcement officials and the media that Our Church members intended to grow and distribute marijuana on the property; Our Church members had a public marijuana planting ceremony. In August 1994 law enforcement officials seized 435 marijuana plants and a bucket containing 3 peyote plants which had formed 5 buds. Case

Brown was subsequently indicted by a grand jury in the United States District Court for the Western District of Arkansas and charged with one count of manufacturing marijuana in violation of 21 U.S.C.§ 841(a)(1), one count of manufacturing peyote in violation of 21 U.S.C.§ 841(a)(1), and one count of using his forty-acre tract of land to facilitate the manufacturing process, thus subjecting the property to forfeiture under 21 U.S.C. § 853. Prior to trial, the Government filed a motion in limine to exclude any evidence or references relating to Brown's contention that his religious beliefs provided him with a legal right to grow or distribute marijuana and peyote, and that the First Amendment and the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb-2000bb-4, provided him with a legal defense to the charges. (*See* United States v. Brown, 72 F.3d 134, 1995 WL 732803, *1 (8th Cir. 1995) (unpublished table opinion)(Doc. 228, Exhibit 2) At a one-day hearing on the motion in limine before the late Honorable H. Franklin Waters, Chief District Judge for the Western District of Arkansas, Brown and other Our Church participants testified about the role marijuana played in their spiritual quest, how their interest in supplying marijuana to the sick was part of their religious tenets, and that church policy allowed distribution to anyone who wanted to join the spiritual quest, **including children with parental permission**. Id. The district court assumed for the purposes of the hearing and trial that Brown was engaged in the exercise of a religion, and that the grand jury indictment was a burden on his free exercise of that religion. The court concluded, however, that the law clearly established that the government had a compelling interest in regulating marijuana and other drugs, and that the government had tailored the interest as narrowly as it could to prevent the kinds of dangers Congress believed existed. Thus, the district court concluded that as a matter of law, the RFRA was not available to Brown as a defense and granted the government's motion in limine, barring admission at trial of all evidence

covered in the government's motion. Id.

On December 2, 1994, Brown was convicted by a jury on all three counts. (Docket Entry #86) On February 10, 1995, the district court sentenced Brown to 121 months imprisonment, four years supervised release, $100 special assessment, and a $17,500 fine. (Docket Entry #133) Brown appealed, arguing, inter alia, that the district court erred in restricting him from advancing any of his defenses at trial. United States v. Brown, 72 F.3d 134, 1995 WL 732803, *2 (8th Cir. 1995)(unpublished table opinion) In addressing Brown's argument, the Eighth Circuit observed that "[i]t is well established that religious conduct does not enjoy the absolute constitutional protection afforded freedom of religious belief" and that "the government has a compelling state interest in controlling the use of marijuana." Id. The Court then rejected Brown's argument, stating that "[w]e agree with the district court that, **based on Our Church's broad use**, the government could not have tailored the restriction to accommodate Our Church and still protected against the kinds of misuses it sought to prevent. Thus, under the circumstances of this case, we conclude the district court correctly determined that Brown could not prevail under the RFRA or the First Amendment. We also conclude the district court did not abuse its discretion in disallowing Brown's other defenses. " Id. (internal citations omitted) Accordingly, the Eighth Circuit affirmed Brown's conviction and 121 month sentence.1 However, on December 5, 1995, the district court reduced Brown's term of imprisonment from 121 months to 60 months based on retroactive changes to the Sentencing Guidelines and left all other terms and conditions in place. Brown subsequently filed petitions for rehearing and/or rehearing en banc in the Eighth Circuit and for writ of certiorari in the United States Supreme Court and those petitions were denied.(*See* Eighth Circuit Docket #95-1616)

In August 1996, Brown filed a motion pursuant to 28 U.S.C. § 2255 in the district court,

asserting that the government lacked power under the Commerce Clause to charge him with drug offenses and that his religious rights were violated when he was prosecuted for drug offenses. (Docket Entry #190) The magistrate issued a report recommending denial of relief, finding Brown's arguments foreclosed by Eighth Circuit precedent and that the matter of the religious defense was decided adversely to Brown on appeal and thus should not be revisited. (Docket Entry #192) On September 30, 1996, the district court adopted the magistrate's report and dismissed the petition. (Docket Entry #194) Brown appealed the district court's denial of his § 2255 Motion to the Eighth Circuit and on December 23, 2996, the Eighth Circuit dismissed his appeal. (Docket Entry #202)

In July 1997, Brown filed a second § 2255 motion in the district court but requested permission to withdraw it in order to first request permission from the Eighth Circuit to proceed in district court. (Docket Entries #203-205) The magistrate recommended that the action be dismissed to allow Brown to proceed in the Eighth Circuit and the district judge adopted the report and dismissed the motion. (Docket Entries #206, 207) On September 17, 1997, the Eighth Circuit denied Brown's motion for permission to file a second or successive 2255 petition without comment.

According to a Motion filed by Brown in 2001, Brown also filed a motion in 1998 for habeas corpus relief pursuant to 28 U.S.C. § 2241 in the United States District Court for the Southern District of Illinois. When that motion was denied, Brown appealed to the 7th Circuit Court of Appeals, which, in February 2000, affirmed the district court without hearing, and directed Brown to file a motion pursuant to § 2255 in the court of conviction. Brown subsequently filed a motion pursuant to 28 U.S.C. § 2241 in this court. The magistrate found that Brown had no viable section § 2241 claim and construed Brown's motion as a second or

successive petition pursuant to § 2255. The magistrate recommended that Brown's motion be dismissed since he had not obtained proper authorization from this Court. (Docket Entry #218) On April 11, 2001, the district court adopted the findings of the magistrate and denied Brown's motion without hearing due to Brown's failure to obtain the permission of this Court to file a second or successive motion pursuant to § 2255. (Docket Entry #221) Brown subsequently filed a Motion for Permission to File a Second or Successive § 2255 in the Eighth Circuit, which the Court denied on March 25, 2002. (Docket Entry #222)

On March 2, 2007, Brown filed the instant "Petition Under 28 U.S.C. Section 1651/2241 and 42 U.S.C. Sec. 2000bb, cc to Vacate the Conviction of a Factually Innocent Person." (Docket Entries #228-230)

## II. Discussion

In his motion, Brown argues that his 1994 convictions for manufacturing marijuana and peyote should be vacated in light of a recent decision of the United States Supreme Court, *Gonzales v. O Centro Espirita Beneficent Uniao Do*, 546 U.S. 418 (2006). According to Brown's theory of his case, the recent Supreme Court ruling recognizing there might be individualized exceptions under the RFRA that could override the Government's interest in uniform application of the Controlled Substances Act, dictates that this court vacate his conviction. Brown argues that the February 21, 2006, Supreme Court O Centro decision gives him a vehicle by which he can now proclaim his "factual innocence" vis-à-vis his drug convictions.

**Brown's Petition as construed as a Motion pursuant to 28 U.S.C. § 2241:**

A defendant filing a 2241 petition must be in custody and must file his petition "in either the district where he is confined...or in any district in which the BOP maintains a regional office." *United States v. Chappel*, 208 F.3d 1069 (8th Cir. 2000); 28 U.S.C. § 2241(c)(1)-(4)

Brown's sentence was reduced to 60 months in December 1995 and he has served his time and been released.  Brown's website indicates that he did serve 53 months in federal prison. Being on supervised release may constitute custody See *Jones v. Cunningham*, 371 U.S. 236, (1963) but there is nothing before the court to indicate that the Petitioner is still on any kind of supervised release and Brown's complaint does in fact state that he is no longer on supervised release.  (Doc. 228-1, page 17, lines 11-13)

The United States Supreme Court has also refused to extend habeas to a petitioner "because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." *Maleng v. Cook*, 490 U.S. 488, (1989)

***Brown's Petition as construed as a Motion pursuant to 28 U.S.C. § 1651:***

Coram nobis relief may lie under certain circumstances where a petitioner has completed his sentence and is no longer in federal custody. *See, e.g., United States v. Little*, 608 F.2d 296, 299 n. 5 (8th Cir.1979); *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir.2001)(the writ is available only when relief under 28 U.S.C. § 2255 is unavailable which generally occurs when the petitioner has completely served his sentence and is no longer "in custody" for the purposes of § 2255.) The jurisdiction provided by the writ is necessarily of limited scope.  It has been black letter law since the Supreme Court recognized the coram nobis writ in *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), that a reviewing court should grant the writ "only under circumstances compelling such action to achieve justice." Id. at 511, 74 S.Ct. at 252. Coram nobis should be granted only "to correct errors of the most fundamental character where the circumstances are compelling to achieve justice." *Correa-Negron v. United States*, 473 F.2d 684, 685 (5th Cir.), cert. denied, 414 U.S. 870, 94 S.Ct. 89, 38 L.Ed.2d 88

(1973).

The reason this rigorous burden of proof is placed on a coram nobis petitioner is obvious. All collateral attacks significantly, and detrimentally, impact on society's interest in the finality of criminal convictions. Inroads on the concept of finality tend to undermine confidence in the integrity of our procedures. Moreover, increased volume of judicial work associated with the processing of collateral attacks inevitably impairs and delays the orderly administration of justice. Because there is no limit on the time when a collateral attack may be made, evidentiary hearings are often inconclusive and retrials may be impossible if the attack is successful. *U.S. v. Mandel* 862 F.2d 1067, *1076 (C.A.4 (Md.),1988)

A writ of error coram nobis is thus an "extraordinary remedy which should only be granted under circumstances compelling such action to achieve justice and to correct errors of the most fundamental character." *United States v. Camacho-Bordes*, 94 F.3d 1168, 1173 (8th Cir.1996)(*quoting* Morgan, 346 U.S. at 511-12)  In order to obtain coram nobis relief, "the petitioner must show a compelling basis" and "must articulate the fundamental errors and compelling circumstances for relief in the application for coram nobis." *Camacho-Bordes*, 94 F.3d at 1173; *see also Kandiel v. United States*, 964 F.2d 794, 796 (8thCir. 1992)(stating that the Eighth Circuit has "emphasized that the movant must articulate the fundamental errors and compelling circumstances for relief in the application for coram nobis..")

It is well recognized that the government has a compelling state interest in controlling the use of marijuana.  See United States v. Fogarty, 692 F.2d 542, (8th Cir. 1982); United States v. Rush, 738 F. 2d 497, (1st Cir. 1984); United States v. Middleton, 690 F. 2d 820, (11th Cir. 1982)

In this case Brown relies completely on the case of *Gonzales v. O Centro Espirita Beneficent Uniao Do*, 546 U.S. 418 (2006).  The O Centro case involved a religious sect with

origins in the Amazon Rainforest which received communion by drinking a sacramental tea, brewed from plants unique to the region, that contains a hallucinogen regulated under the Controlled Substances Act by the Federal Government. The Government conceded that this practice was a sincere exercise of religion, but nonetheless sought to prohibit the **small** American branch of the sect from engaging in the practice, on the ground that the Controlled Substances Act bars all use of the hallucinogen. The sect sued to block enforcement against it of the ban on the sacramental tea, and moved for a preliminary injunction.

The District Court heard evidence from both parties on the health risks of hoasca and the potential for diversion from the church. The Government presented evidence to the effect that use of hoasca, or DMT more generally, can cause psychotic reactions, cardiac irregularities, and adverse drug interactions. The UDV countered by citing studies documenting the safety of its sacramental use of hoasca and presenting evidence that minimized the likelihood of the health risks raised by the Government. With respect to diversion, the Government pointed to a general rise in the illicit use of hallucinogens, and cited interest in the illegal use of DMT and hoasca in particular; the UDV emphasized the thinness of any market for hoasca, the relatively small amounts of the substance imported by the church, and the absence of any diversion problem in the past.

The District Court concluded that the evidence on health risks was "in equipoise," and similarly that the evidence on diversion was "virtually balanced." In the face of such an even showing, the court reasoned that the Government had failed to demonstrate a compelling interest justifying what it acknowledged was a substantial burden on the UDV's sincere religious exercise. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, Id., *1218

Although the Supreme Court recognized in O Centro that there might be individualized exceptions under the RFRA that could override the Government's interest in uniform application of the Controlled Substances Act under certain situations, such recognition falls exceedingly well short of amounting to the type of change in the law which would equate to Brown having been convicted for conduct which is no longer illegal. All of the conduct for which Brown was convicted remains very much illegal even after O Centro.

Much of the Petitioner's argument at the Motion in Limine hearing dealt with the alleged medical benefit of marijuana and the desire of the Petitioner to "give" the marijuana to those who needed it. Elvy Musikka, the Petitioner's own witness, testified that she received medicinal marijuana from the government. (Doc. 228, Exhibit 1, page 6) The very testimony of the Petitioner's witness belies the need of the existence of Our Church, if the existence was to distribute marijuana to those who medically needed it. Most disconcerting was the fact that the Petitioner contended marijuana would be distributed to any one, even children, with parental consent, if they joined the church. The risk of diversion of marijuana from such a loosely knit organization could be great.

The district court did make the very evaluation which was made in O Centro and the Court of Appeals concluded that the evaluation made by the district court was correct. In O Centro the court found that the Government had not met its burden and in Brown the court found that it had. The Court of Appeal held that " [w]e agree with the district court that, **based on Our Church's broad use**, the government could not have tailored the restriction to accommodate Our Church and still protected against the kinds of misuses it sought to prevent... [T]hus, under the

circumstances of this case, we conclude the district court correctly determined that Brown could not prevail under the RFRA or the First Amendment." (Doc. 228, Exhibit 2)

### Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. Section 2255 and 2241 be dismissed with prejudice.

**The Petitioner shall have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 23rd  day of July 2007

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE